People v Abidov (2021 NY Slip Op 21357)

People v Abidov

2021 NY Slip Op 21357 [74 Misc 3d 34]

Accepted for Miscellaneous Reports Publication

Supreme Court, Appellate Term, Second Department, 2d, 11th 
and 13th Judicial Districts

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, March 2, 2022

[*1]

The People of the State of New York, Respondent,
v
Khikmat Abidov, Appellant.

Supreme Court, Appellate Term, Second Department, 2d, 11th and 13th Judicial Districts, December 22, 2021

APPEARANCES OF COUNSEL

New York City Legal Aid Society (Jonathan McCoy and Ronald Zapata of counsel) for appellant.
Eric Gonzalez, District Attorney (Leonard Joblove, Ann Bordley and Julian Joiris of counsel), for respondent.

{**74 Misc 3d at 35} OPINION OF THE COURT

Memorandum.

Ordered that the judgment of conviction is affirmed.
Defendant was charged in an accusatory instrument with assault in the third degree (Penal Law § 120.00 [1]), attempted assault in the third degree (Penal Law §§ 110.00, 120.00 [1]), menacing in the third degree (Penal Law § 120.15), and harassment in the second degree (Penal Law § 240.26 [1]). Defendant appeared for arraignment on June 17, 2016. On June 22, 2016, the People served and filed a statement of readiness dated June 22, 2016, along with a superseding information charging the same offenses, the supporting deposition of the complainant, and a certificate of translation (titled a "Certificate of Interpretation"), all dated June 21, 2016. Insofar as is relevant to the issues raised on appeal, the superseding information, sworn to and executed by an assistant district attorney, stated the following:
"The deponent is informed by [complainant] that, at the above time and place, the [*2]defendant did punch the informant about the face multiple times{**74 Misc 3d at 36} and did pick the informant up by the informant's shirt and slam the informant into [sic] the ground multiple times.
"The deponent is further informed by the informant that the above described actions caused informant to lose consciousness for a period of time, to suffer bruising to the face, swelling to the face, redness to the face, dizziness, pain to the shoulder, blurred vision, pain to the head, headaches, to be transported to a local area hospital, to suffer a laceration to the informant's head which required multiple stitches to the informant's head, to suffer substantial pain, to fear further physical injury and to become alarmed and annoyed."
The supporting deposition stated in pertinent part: "I, [complainant], read the accusatory instrument filed in this action. The facts in that instrument stated to be on information furnished by me are true to my personal knowledge."
On January 18, 2017, defendant filed a motion to dismiss on the grounds that the accusatory instrument was duplicitous and lacked specificity, and that he had been denied his statutory right to a speedy trial pursuant to CPL 30.30 (1) (b). The notice of motion indicated that he was also moving to dismiss based on constitutional speedy trial grounds (see CPL 30.20); however, the motion contained no arguments with respect thereto. In his motion, and again on appeal, defendant argues that the People failed to file a proper affidavit by the translator pursuant to CPLR 2101 (b) because the filed certificate of translation failed to state the translator's professional qualifications and that his translation was accurate. Therefore, defendant concluded, the People failed to properly convert the misdemeanor complaint and were never ready for trial in this matter. The People opposed the motion, and, by order dated March 1, 2017, the Criminal Court (Carolyn Walker-Diallo, J.) denied defendant's motion.
On May 30, 2017, defense counsel, in defendant's presence, waived prosecution by information and defendant pleaded guilty (Curtis J. Farber, J.) to assault in the third degree, menacing in the third degree, and harassment in the second degree, with a promised sentence of three years' probation. Defendant was sentenced (Lorna J. McAllister, J.) as promised on September 6, 2017, and has completed his sentence.
On appeal, defendant contends that his speedy trial rights under CPL 30.30 and 30.20 were violated because the People{**74 Misc 3d at 37} failed to file a certificate of translation that complied with CPLR 2101 (b), and, thus, the People never properly converted the superseding accusatory instrument and all statements of readiness were illusory. As defendant's motion to dismiss did not raise the specific constitutional speedy trial claims he now advances on appeal, those contentions are unpreserved for appellate review (see People v Jordan, 62 NY2d 825 [1984]; People v Cedeno, 52 NY2d 847, 848 [1981]; People v Lieberman, 47 NY2d 931, 932 [1979]), and we decline to reach them in the interest of justice.
While the judgment of conviction was rendered upon defendant's plea of guilty prior to the enactment of CPL 30.30 (6), we need not decide here whether that subdivision should be applied retroactively since, as set forth more fully below, defendant's CPL 30.30 claim is, in any event, without merit.
Since defendant was charged with violating Penal Law § 120.00 (1), a class A [*3]misdemeanor, the People were required to announce their readiness for trial within 90 days of the commencement of the action (see CPL 30.30 [1] [b]; see also People v Lomax, 50 NY2d 351, 356 [1980]). With regard to the sufficiency of an accusatory instrument, it is well settled that a court does "not look beyond its four corners (including supporting declarations appended thereto)" (People v Hardy, 35 NY3d 466, 475 [2020]; see CPL 100.15 [3]; 100.40 [1] [c]). A court must "not rely on external factors to create jurisdictional defects not evident from the face of the" accusatory instrument (People v Konieczny, 2 NY3d 569, 576 [2004]). Morever, "the CPL does not require a certificate of translation, let alone a certificate in any particular form, to create a facially sufficient instrument" (People v Slade, 37 NY3d 127, 139 [2021], citing CPL 100.15 and 100.40 [1]).
Here, although a certificate of translation was served and filed with the superseding accusatory instrument, it was not referenced or incorporated in the instrument or the supporting deposition, and therefore the certificate of translation cannot be used to create a "facial defect" that is otherwise not apparent on the face of the accusatory instrument and supporting deposition (see Slade, 37 NY3d at 138 [holding that "(n)o inquiry beyond the instrument's face is required or appropriate"]). Moreover, with respect to defendant's reliance on CPLR 2101 (b) to support his contention, the Court of Appeals made it patently clear that
"[t]he Uniform Rules for Trial Courts generally {**74 Misc 3d at 38}direct courts exercising criminal jurisdiction to comply[ ] with the applicable provisions of CPLR 2101. However, the specific rules applicable to facial sufficiency of misdemeanor informations are found in the CPL and the governing provisions do not require a certificate of translation or the affidavit of a translator. CPLR 2101 (b) cannot be used to override those specific requirements, and we decline to effect that result by judicial fiat" (Slade, 37 NY3d at 139 [internal quotation marks and citations omitted]).
We therefore find that the People properly converted the misdemeanor complaint to an information on June 22, 2016, and that all subsequent adjournments chargeable to the People fell well below the statutory 90-day period.
Defendant's contention that his plea was not entered knowingly, intelligently and voluntarily is unpreserved for appellate review, as defendant raised no objection at the plea proceeding (see CPL 470.05 [2]), failed to move to withdraw his guilty plea (CPL 220.60 [3]), and failed to move to vacate the judgment of conviction pursuant to CPL 440.10. Contrary to defendant's contention, no exception to the preservation rule applies here because defendant was not immediately sentenced after he pleaded guilty and therefore he had ample time to object (see People v Williams, 27 NY3d 212, 219-223 [2016] [holding that the defendant had multiple opportunities between adjournments to preserve his challenge to his guilty plea]; cf. People v Louree, 8 NY3d 541 [2007] [excusing the defendant's failure to preserve his claim because the defendant had no practical ability to assert that the plea was invalid prior to the imposition of sentence]; cf. also People v Conceicao, 26 NY3d 375, 384 [2015]).
In any event, defendant pleaded guilty knowingly, intelligently and voluntarily. In People v Lopez (71 NY2d 662 [1988]), the Court of Appeals held that if a defendant's factual recitation negates an essential element of the crime pleaded to, the court must inquire further to ensure that the defendant understands the nature of the charge and that the plea is intelligently entered (see Lopez, 71 NY2d at 666; People v Francis, 38 NY2d 150, 153 [1975]; People v Beasley, 25 [*4]NY2d 483, 487-488 [1969]). At the plea proceeding, defendant initially suggested that he lacked the requisite intent as his conduct was justified. However, the Criminal Court subsequently made a sufficient inquiry to determine whether the intent element of assault in the third degree was established, and defendant{**74 Misc 3d at 39} failed to object to the sufficiency of the further inquiry. Notably, the Criminal Court advised defendant that he did not have to plead guilty; that if he believed he was justified in his actions he should not plead guilty; that he should answer truthfully; and that no one was forcing him to plead guilty. The Criminal Court further allowed him to consult with counsel several times. Defendant ultimately stated, "I did hit him" and "[y]eah, I wanted to harm [the complainant]," repudiating any earlier suggestion that he might have lacked the requisite intent.
Defendant's final contention, that the sentence of probation was excessive, is academic, as defendant has completed his sentence (see People v McLaine, 64 NY2d 934 [1985]; People v Parker, 156 AD3d 1059, 1060 [2017]; People v Bradley, 63 Misc 3d 139[A], 2019 NY Slip Op 50570[U], *1 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2019]; People v Hughes, 12 Misc 3d 128[A], 2006 NY Slip Op 50919[U], *3 [App Term, 2d Dept, 9th & 10th Jud Dists 2006]).
Accordingly, the judgment of conviction is affirmed.

Toussaint, J. (concurring in the following memorandum). I reluctantly concur in light of the recent Court of Appeals holding in People v Slade (37 NY3d 127 [2021]); however, I strongly agree with the separate opinions of both dissenting Judges in Slade. In this action, defendant was arraigned on an initial accusatory instrument where there was no indication the complainant was not proficient in English. A superseding information with additional allegations was later filed. Attached was the supporting deposition of the complainant stating that she had read the accusatory instrument and that the facts "stated to be on information furnished by me are true to my personal knowledge." Also attached was a certificate of translation (titled a "Certificate of Interpretation") where the certificate signer states that the complaint and supporting deposition had been read to the complainant in Spanish before they were signed. The certificate of translation also states that the complainant "speaks Spanish (language) and I speak and read English [sic] Spanish (language) and English fluently." No other description of the translation process or the translator's qualifications was provided, raising numerous questions. Was there a Spanish interpretation of the complaint that the translator read verbatim to the complainant? If so, where is it? Did the translator simply state in Spanish what he believed the English words meant? If so, what were the translator's{**74 Misc 3d at 40} qualifications? Was there any relationship between the complainant and the translator? (See Slade, 37 NY3d at 153-157 [Rivera, J., dissenting].)
The majority opinion in Slade broadly held that an accusatory instrument is not subject to dismissal for defects that do not appear on the face of the instrument (where, as here, for example, a translator was needed), as they "are latent deficiencies that do not require dismissal" (Slade, 37 NY3d at 137 [internal quotation marks and brackets omitted]). The Court further held that even if the need for a translator is disclosed, "certifying and qualifying the translator[ ] is neither required nor envisioned by the CPL" (id. at 143 [citation omitted]). Thus, under the Slade standards, the subject superseding information and supporting deposition, with or without the certificate of translation, are sufficient as an information and defendant's challenge on the [*5]basis of sufficiency is without merit. However, as Judge Wilson succinctly stated in dissent:
"Undoubtedly, accurate translation is vital for each of the CPL's protections. The prohibition on hearsay requires direct translation of a witness's or victim's story, not a mere summary. The line between mischaracterization and translation rests entirely on the skill of the translator. Similarly, to meet the verification requirement, a translator must read the allegations back to the victim or witness verbatim, along with the accompanying caution against perjury. Without proof of translation and reason to be confident in its accuracy, there is little reason to trust the soundness of the accusatory instrument. The consequences of mistranslation can be dire, not just for defendants, but for victims as well" (Slade, 37 NY3d at 163 [citation omitted]).
Accordingly, with great reluctance, I concur.
Aliotta, P.J., and Elliot, J., concur; Toussaint, J., concurs in a separate memorandum.